**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRELAND BARCEL LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-cv-7170 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| VILLAGE OF GLEN ELLYN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant United Airlines's motion to dismiss [21] and Plaintiff Breland Barcel Lee's motion for leave to file a first amended complaint [31]. For the reasons set forth below, Defendant's motion to dismiss [21] is granted and Plaintiff's motion to amend [31] is granted in part and denied in part.

**I.  Background**

Plaintiff Breland Barcel Lee, a citizen of North Carolina, flew from Raleigh-Durham to Chicago, Illinois on Defendant United Airlines ("United") on April 13, 2016. Upon deplaning at O'Hare International Airport, Plaintiff alleges that he was "accosted" and "aggressively questioned" by members of a Drug Enforcement Administration ("DEA") interdiction task force. [1, ¶ 21.] According to Plaintiff, "an unknown employee of United Airlines" works as a "paid confidential informant" for the DEA task force and "regularly provides the entire flight manifests" to task force officers to "personally enrich himself/herself," rather than for any legitimate security purpose. *Id.* ¶¶ 11–13. Purportedly in reliance on this manifest, the task force agents singled out Plaintiff.

Specifically, the task force officers allegedly demanded Plaintiff's identification and continued to "harass" Plaintiff after he told them that he did not want to answer their questions.

1

*Id.* ¶ 24. The officers then followed Plaintiff to the gate for his connecting flight. When he reached his connecting gate, an unknown DEA task force officer "had a conversation with the United Airlines gate agent around boarding time * * * to delay plaintiff's boarding." *Id.* ¶ 28. The officers were ultimately able to delay Plaintiff from boarding, at which point they "forcefully physically seized his suitcase." *Id.* ¶ 29. His suitcase was returned days later "missing approximately $4,900." *Id.* ¶ 30.

Based on this conduct, Plaintiff filed a four-count complaint against one named DEA task force officer (Anthony Terranova, who is also an officer of the Village of Glen Ellyn Police Department [1, ¶ 5]), three unnamed DEA task force officers, United, and the Village of Glen Ellyn. Counts I, II, and III assert claims under 42 U.S.C. § 1983 against Terranova, the other DEA task force officers, and United for unlawful seizure of Plaintiff's suitcase, person, and currency, respectfully. Count IV is solely an indemnity claim against the Village of Glen Ellyn.

Defendant United filed a motion to dismiss all claims asserted against it [21]. While that motion was pending, Plaintiff settled with Officer Terranova and the Village of Glen Ellyn, both of whom have been dismissed from this case [39]. Complicating matters, Plaintiff filed a motion for leave to file an amended complaint [31] the day after United filed its reply brief in support of its motion to dismiss [29]. The proposed amended complaint asserts seven counts. Counts I and II are still 42 U.S.C. § 1983 claims for seizure of Plaintiff's suitcase and person, but are now asserted against the three unnamed DEA task force officers, United, and the unnamed United employee who allegedly doubles as a confidential informant for the task force ("John Doe"). Under these counts, the claims against United are both for "Respondeat Superior" in its capacity as John Doe's employer and for United's "acts and omissions pursuant to [its] policies and practices." [31-1, ¶¶ 50, 54.] Count III is for "Conspiracy to Violate [Fourth] Amendment

2

Rights," and is asserted against all five Defendants. *Id.* at 11–12. Count IV is for Intentional Infliction of Emotional Distress ("IIED") under Illinois law and is asserted against all Defendants. Against United, this claim is also asserted on the grounds of "Respondeat Superior" and its "policies and practices." *Id.* ¶ 63. Counts V and VI mirror Counts I and II, but are asserted under Section 6 of the Illinois Constitution. *Id.* at 13–14. Count VII asserts a false imprisonment claim under Illinois law against United only. *Id.* at 15.

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Rule 15 permits a party to amend its complaint once as a matter of course either within 21 days after serving it or 21 days after service of responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 also directs that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). A court should give leave to amend "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (citation omitted). "'The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (citation omitted).

## III. Analysis

Defendant United's motion to dismiss raises a host of arguments against Plaintiff's original complaint: (1) claims based on actions taken by the DEA task force are not viable under Section 1983 because that statute applies only to actions taken under color of *state* law; (2) there is no corresponding cause of action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against private actors; (3) United was, at best, a bystander who agreed to help law enforcement, which does not expose it to Section 1983 liability; (4) United did not play a role in—let alone cause—the alleged violations of Plaintiff's constitutional rights; (5) United

4

cannot be held liable under Section 1983 under a *respondeat superior* liability theory; and (6) Plaintiff failed to satisfy the procedural requirements of the Federal Tort Claims Act. [See 22.]

Defendant's motion to dismiss is resolved by answering whether the DEA interdiction task force described in the complaint acted under color of federal or state law. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[A]n action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law." *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). Plaintiff contends that the task force acted under state law because it is "comprised primarily of local law enforcement officers working for and being paid by local law enforcement agencies." [40, ¶ 4.] Plaintiff further argues that "the agent the United employee conspired with [*i.e.*, former Defendant Terranova] is a village of Glen Ellyn police officer acting in the scope of his employment with Glen Ellyn." [26, at 5.] Defendant responds that the two allegations in the original complaint involving its employees concern interactions with only federal officers. [See 1, ¶ 11 (John Doe "provided the DEA Chicago Field Division with the flight manifest" for Plaintiff's flight); *id.* ¶ 28 ("One of Defendant Unknown DEA Task Force Officers had a conversation with the United Airlines gate agent around boarding time").] Moreover, there are no actual allegations in the original complaint that United conspired with former Defendant Terranova.

These arguments focus too narrowly. "The United States Department of Justice, acting through the [DEA], enters into task force agreements with participating local law enforcement agencies to undertake joint investigations." *Bordeaux v. Lynch*, 958 F. Supp. 77, 84 (N.D.N.Y. 1997). "Pursuant to 21 U.S.C. § 878(b) and 5 U.S.C. § 3374(c), state and local law enforcement

officers designated as federal task force members are treated as federal employees for the purposes of any federal tort liability statute." *Aikman v. Cty. of Westchester*, 691 F. Supp. 2d 496, 498–99 (S.D.N.Y. 2010). "Courts have consistently treated local law enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents." *Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005). In doing so, these courts have found that Section 1983 does not apply.[1] Courts have even held that Section 1983 claims cannot be pursued against this *same* DEA task force in Chicago for this *same* reason. See *Amoakohene v. Bobko*, 792 F. Supp. 605, 608 (N.D. Ill. 1992) ("[T]he purpose of the joint task force was to stymie drug trafficking. * * * [W]hen the plaintiffs were stopped by the defendants at Union Station, this activity was conducted as a result of the federal mission of these officers. In our view, these

---

[1] See, *e.g.*, *Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) (holding that local officers "assigned to an FBI Joint Organized Crime and Drug Enforcement Task Force" were "federally deputized for their Task Force work," and thus the claim was "properly brought" as a *Bivens* action); *Majors v. City of Clarksville*, 113 F. App'x 659, 660 (6th Cir. 2004) (construing § 1983 claim against "police officers who were acting as deputized Task Force Agents by the [DEA]" as a *Bivens* claim "in reality"); *Ellis v. Ficano*, 73 F.3d 361, at *6–7 (6th Cir. 1995) (finding that county sheriff's department officers "deputized by the DEA as DEA Task Force officers * * * were acting under color of federal law, not state law as required by § 1983"); *Texas v. Kleinert*, 143 F. Supp. 3d 551, 562 (W.D. Tex. 2015) ("Courts have consistently treated local law-enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents."); *Pike v. United States*, 868 F. Supp. 2d 667, 670, 677–678 (M.D. Tenn. 2012) (concluding that § 1983 claims against "state and local law enforcement officers who served as members of the Fugitive Task Force * * * [of] a program coordinated by the United States Marshal's Service" were "plainly *Bivens* claims, not § 1983 claims"); *Ivey v. Lyman*, 2005 WL 1397134, at *2 (N.D.N.Y. June 1, 2005) ("[D]efendant is employed by the Albany Police Department, and thus would generally be acting under color of state law in his capacity as a police officer. However, because he was working with the DEA and assigned to the DETF, he is considered to be acting as a federal agent."); *Tyson v. Willauer*, 289 F. Supp. 2d 190, 192 n.1, 193 n.3 (D. Conn. 2003) ("Defendant Willauer was a formally deputized member of the Federal Task Force, and was acting in that capacity during the incident[.] * * * Since Defendant Willhauer is being treated as a federal employee for purposes of this case, the § 1983 claim against him should have been asserted as a *Bivens* claims[.]"); *Bordeaux*, 958 F. Supp. 77, 83–84 ("[Defendants] were assigned to the Central New York Drug Task Force; a program which operates under the command of the federal Drug Enforcement Administration ("DEA"). * * * As federal employees, [Defendants] were not state actors and thus are not amenable to suit under Section 1983[.]"); *Pou v. U.S. Drug Enf't Admin.*, 923 F. Supp. 573, 579 (S.D.N.Y. 1996) ("Where, as here, it is undisputed that defendants Rogers and Fritzen were acting in their capacity as federal officers as DEA task force agents, they were not acting under color of state law, and a § 1983 claim must fail."); see also *United States v. Martin,* 163 F.3d 1212, 1214 (10th Cir. 1998) (holding that local police detective deputized to participate in federal narcotics investigation is a federal officer within the meaning of 18 U.S.C. § 115(a)(1)(B)); *United States v. Torres,* 862 F.2d 1025, 1030 (3d Cir. 1988) (same).

officers were acting as federal agents because their activities were conducted as part of a federal investigation."). Plaintiff cites nothing to the contrary.

Plaintiff has no basis to contend that "DEA Task Force" officers were acting pursuant to state law when carrying out their federal DEA task force functions beyond his allegation that they were not permanent federal employees.[2] "The mere assertion that one is a state officer does not necessarily mean that one acts under color of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). Indeed, the fact that Plaintiff refers to Defendants as "Unknown DEA Task Force Officer" and "TFO Terranova" shows that even Plaintiff considers these officers to have been acting as federal task force officers carrying out DEA task force functions at the time of their encounter with Plaintiff. Plaintiff's motion for leave to file an amended complaint goes even further, stating that "it is now clear that United Airlines as an entity has conspired with the *DEA*" [31, ¶ 8 (emphasis added)], and arguing that amending his complaint is needed after "multiple public media reports in the last few months regarding United's relationship with *federal law enforcement*" (*id.* ¶ 14 (emphasis added)). Because "any action taken on the part of the DEA agents is action under federal, not state law," *Jean-Louis v. Clifford*, 2008 WL 3479806, at *4 (D.N.J. Aug. 12, 2008), United did not conspire or engage in a joint concerted with any official operating under color of "state law" for purposes of Section 1983 liability.

Accordingly, Plaintiff cannot sue United under 42 U.S.C. § 1983. Moreover, Plaintiff does not dispute that his claims cannot be pursued as a *Bivens* claim. See *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001). Therefore, all of Plaintiff's original claims against United must be dismissed, and Defendant's motion to dismiss [21] is granted.

---

[2] Other than Defendant Terranova, Plaintiff does not have any basis to say whether these officers worked for municipalities or were full-time federal agents. The original complaint simply skirts this issue, alleging that "each engaged in the conduct complained of while on duty, in the course and scope of their employment and under color of law." [1, ¶ 6.] Glossing over *which* jurisdiction's law these DEA task force officers purportedly acted under is not an effective way to avoid this problem.

That leaves Plaintiff's motion for leave to file an amended complaint [31]. Plaintiff's two express Section 1983 claims against United (Counts I and II) are a non-starter.[3] "[A] court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (citation and internal quotation marks omitted). Allowing Plaintiff to reassert such Section 1983 claims against United would be futile, and Plaintiff's request to do so is denied. The same goes for Count III (the "conspiracy" claim), which also appears to be a Section 1983 claim.[4]

Plaintiff faces other problems regarding Counts V and VI, which assert claims under Section 6 of the Illinois Constitution. Courts in this circuit have concluded that this provision does not create an implied private right of action for damages. See *Wagner v. Evans*, 2016 WL 397444, at *5 (N.D. Ill. Feb. 2, 2016) ("[T]he provisions in question do not create a private right of action for damages claims[.]"); *Berrum-Plata v. United States*, 2013 WL 1344017, at *2 (N.D. Ill. Apr. 3, 2013) ("[D]istrict courts that have considered the issue have held that there is no such right."); *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 862 (N.D. Ill. 2010) (declining to find "an independent cause of action for unreasonable search and seizure and invasion of privacy under the Illinois Constitution"); *Woods v. Clay*, 2005 WL 43239, at *24 (N.D. Ill. Jan. 10, 2005) ("[I]t would appear that the plaintiffs may not maintain a separate, independent cause of action

---

[3] In his response to United's motion to dismiss, Plaintiff "agree[d] that he does not and cannot [assert] vicarious liability against United on his Section 1983 claims." [26, at 5.] This concession makes Plaintiff's request to add a claim for *respondeat superior* liability under Section 1983 against United [33-1, ¶¶ 50, 54] somewhat puzzling. Regardless, this theory would not be viable even if the task force officers had acted under color of state law. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("*Respondeat superior* liability does not apply to private corporations under § 1983.").

[4] In contrast to Counts IV through VII, Counts Count III is not labeled as an "Illinois State Law Claim" like and does not include any specific dollar amount. Plaintiff also argues that Count IV through VII rest on diversity jurisdiction [40, ¶ 1], implying that Count III (like Counts I and II) rest on federal question jurisdiction.

under the Illinois Constitution[.]"); *Richard v. Lukensmeyer*, 1999 WL 261835, at \*4 (N.D. Ill. Apr. 12, 1999) ("[T]he Illinois Supreme Court would not recognize a separate cause of action under Article I, Section 6."). Because Plaintiff has other remedies against United and the other defendants, the Court declines to find such a cause of action under the Illinois Constitution is viable here. Thus, amendment will not be permitted for Counts V and VI against United.

That leaves only Counts IV (IIED) and Count VII (False Imprisonment). Plaintiff invokes diversity jurisdiction to keep such claims in federal court. [40, ¶¶ 2, 12.] On this record, the Court cannot conclude that allowing Plaintiff to amend his complaint to pursue these claims would be futile because such claims must fail as a matter of law. The Court discerns no bad faith or dilatory motive on Plaintiff's behalf in pursuing these amendments, and Defendant does not articulate how it would be unduly prejudiced by allowing the complaint to be amended for these claims. *Barry*, 377 F.3d at 687. Accordingly, Plaintiff's motion for leave to amend his complaint to assert these two claims against United is granted. Defendant is free to move to these dismiss these claims on any basis permitted by Rule 12.[5]

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss [21] and grants in part and denies in part Plaintiff's motion for leave to file an amended complaint [31].

Dated: May 15, 2017

_____
Robert M. Dow, Jr.
United States District Judge

---

[5] Plaintiff argues that Defendant has "waived any argument that diversity jurisdiction is appropriate" by failing to raise this issue in response to Plaintiff's motion for leave to amend. [40, ¶ 13.] Subject matter jurisdiction is not waivable. *United States v. Cty. of Cook, Ill.*, 167 F.3d 381, 387 (7th Cir. 1999). Nothing in this opinion or the parties' briefing to-date precludes Defendant from arguing that this Court lacks subject matter jurisdiction or prevents the Court from raising that issue *sua sponte*.

9